# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

FILED
May 25 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 3-23-mj-70740 MAG |
| Rodolofo Sagastume-Pineda | ) |
|  | ) |
|  | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  April 24, 2023 and May 8, 2023  in the county of  San Francisco  in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) | Possession with intent to distribute methamphetamine; Possession with intent to distribute fentanyl |

This criminal complaint is based on these facts:

Please see the attached affidavit of DEA TFO Christina Hayes

☑ Continued on the attached sheet.

Approved as to form  /s/ Emily R. Dahlke
AUSA  Emily R. Dahlke

/s/ Christina Hayes
*Complainant's signature*

DEO TFO Christina Hayes
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/24/2023

*Judge's signature*

City and state:  San Francisco, California        Hon. Laurel Beeler
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Christina Hayes, a Case Specific Task Force Officer of the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I make this Affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant charging RODOLFO SAGASTUME-PINEDA with one count of possession with intent to distribute methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(a)(1), and (b)(1)(C); and two counts count of possession with intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide, also known as fentanyl, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C)), on or about April 24, 2023, in the Northern District of California.

## SOURCES OF INFORMATION

2. Because this Affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that the violations of federal law identified above have occurred.

3. I have based my statements in this Affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, and information provided by records and databases. I believe these sources are reliable. Where I refer to conversations and events, I refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This Affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

**AFFIANT BACKGROUND**

4.     I am an "investigator or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) – that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21 of the United States Code.

5.     I am a Case Specific Task Force Officer (TFO) with the Drug Enforcement Agency (DEA) within the San Francisco Divisional Office in California. I am currently assigned to the San Francisco Police Narcotics Unit, and have been so employed as a sworn police officer for 16 years. Prior to my current assignment, I was assigned to the Northern Street Crimes Unit, Northern Station Midnight Patrol and Southern Station Midnight Patrol. I have been working undercover for over nine years. My training includes approximately 40 hours of narcotics related instruction in the San Francisco Police Academy. I also attended the San Francisco Police Department Detective school where I received additional narcotics investigations training. The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. I have also completed the following courses: Narcotics Trafficking and Vehicle Concealment Course; Dangerous Drug/Abused Drugs/Drug Recognition Course; Emerging Drug Trends; Street Development; Methamphetamine Investigations and Updates; Oxycontin and Heroin Course; Electronic Surveillance (State WireTap); Drug Identification, Trends and Influences (a 24 hour course); ATF Undercover School (a 40 hour course); Current Heroin Threat; Fentanyl Safety Awareness; Pill Investigations; Fentanyl Investigations and Other Synthetic Opioids; Current Drug Trends: Psychoactive Substances; and Drug Identification (a 16 hour course).

6.     During the course of my employment as a Police Officer, I have participated in numerous surveillance operations and arrests for Health and Safety Code Violations, firearms arrests, robbery, auto, residential, and commercial burglary, where stolen property, firearms and narcotics has been recovered. I have worked with more experienced officers who have trained

me in detecting the habits and characteristics of narcotics dealers and burglary suspects. Additionally, I have participated in the preparation and execution of search warrants, during which narcotics, stolen property, and weapons were seized.

7. I have seen street-level narcotics transactions well over 1,000 times in my career. I have participated in hundreds of buy bust/buy walk operations, surveillance operations, arrests and search warrants. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, by way of example but not limitation, undercover operations, telephone toll analysis, records research, and physical surveillance.

8. Through my training, education, experience, and conversations with other officers and agents who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones and am familiar with their use of code words to conduct business. I have become familiar with drug traffickers' methods of operation including but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

9. I have participated in the investigation discussed in this Affidavit. I have reviewed records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed.

**APPLICABLE LAW**

10. Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) prohibits any person from knowingly or intentionally distributing or possessing with intent to distribute fentanyl, a Schedule II controlled substance.

11. Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) prohibits any person

from knowingly or intentionally distributing or possessing with intent to distribute a Schedule I or II controlled substance, such as methamphetamine.

## FACTS ESTABLISHING PROBABLE CAUSE

**A. On April 24, 2023, SAGASTUME-PINEDA engages in four observed hand-to-hand drug transactions near Seventh and Mission Streets in San Francisco.**

12. Within an approximate one block radius of Seventh Street between Mission and Market Streets in San Francisco sit a federal office building at 90 Seventh Street, a federal courthouse, a preschool, a methadone clinic, and a health resource center serving the community. This area has suffered from an increase in criminal activity including drug trafficking, drug use, assaults, robberies, stabbings, and shootings.

13. Some of these buildings have exterior video cameras that are capable of recording high-quality video footage of the criminal activity that occurs on the public streets and sidewalks outside of the buildings.

14. On April 24, 2023, I went to the federal building at 90 Seventh Street, in San Francisco, California, in the Northern District of California. I met with building security. Together, building security and I watched the live camera footage in the camera room to observe and monitor activity on the street.

15. On April 24, 2023, at approximately 3:15 pm, I observed through the live camera feed an individual later identified as SAGASTUME-PINEDA on the sidewalk of Seventh Street, between Natoma and Mission Streets. Over the course of several minutes, I observed SAGASTUME-PINEDA engage in a series of hand-to-hand drug transactions.

16. First, I observed an unknown woman walk up to SAGASTUME-PINEDA and hand him paper currency. SAGASTUME-PINEDA then waved the woman to walk south on Seventh Street. SAGASTUME-PINEDA took off the gray backpack he was wearing. He reached into the backpack and appeared to be manipulating the backpack. He then handed the woman a clear plastic baggie containing a white substance inside. Based on my training and experience

and what I observed, I believe that the baggie contained narcotics.

17. Next, I observed an unknown man approach SAGASTUME-PINEDA and hand him paper currency. SAGASTUME-PINEDA accepted the cash, took off his backpack and manipulated the inside of the backpack. SAGASTUME-PINEDA then handed the man a clear plastic baggie.

18. I then observed an unknown woman approach SAGASTUME-PINEDA. SAGASTUME-PINEDA waved the woman over to an area between two tents. SAGASTUME-PINEDA manipulated his backpack and handed the woman a plastic baggie containing a white substance inside. Based on my training and experience, I believe that the baggie contained narcotics.

19. Finally, I observed an unknown man approach SAGASTUME-PINEDA and hand him paper currency. SAGASTUME-PINEDA accepted the cash, manipulated his gray backpack and handed the man a clear plastic baggie containing a white substance inside. Based on my training and experience, I believe that the baggie contained narcotics.

### B. **SAGASTUME-PINEDA is arrested and has prior convictions related to drug dealing.**

20. After observing what I believed to be four hand-to-hand drug sales, I saw SAGASTUME-PINEDA walk along Mission Street. I communicated his location and description to law enforcement officers who arrested SAGASTUME-PINEDA. I responded to the scene of the arrest and confirmed that SAGASTUME-PINEDA was the same man I saw engage in hand-to-hand drug transactions via the live video monitoring.

21. According to a criminal record check, SAGASTUME-PINEDA was convicted of violating Health and Safety Code § 11352—felony transport of a controlled substances for sale—in San Francisco in 2017. Additionally, he was convicted of violating Penal Code § 32—accessory after the fact—arising from a drug sales arrest in Alameda County in 2022. He was on probation for this latter conviction at the time of his arrest on April 24, 2023.

**C. SAGASTUME-PINEDA's backpack contained fentanyl and methamphetamine.**

22. I searched SAGASTUME-PINEDA's backpack and discovered a digital working scale. His backpack also contained 96.7 gross grams of fentanyl and 30.8 gross grams of methamphetamine. The backpack also contained 11.1 grams of heroin and 4.3 grams of cocaine base. The narcotics were packaged in multiple smaller plastic baggies, which in my training and experience, is consistent with packaging for sales.

23. I conducted presumptive testing of the fentanyl and methamphetamine using an SFPD-issued TruNarc Analyzer. The suspected fentanyl tested positive for fentanyl. The suspected methamphetamine tested positive for methamphetamine.

24. Based on my training and experience, the 96.7 gross grams of fentanyl and 30.8 gross grams of methamphetamine were usable amounts of controlled substances and these quantities were consistent with distribution as opposed to personal use.

**D. SAGASTUME-PINEDA sells drugs to an undercover officer on May 8, 2023.**

25. SAGASTUME-PINEDA was subsequently charged for offenses arising from this arrest in San Francisco Superior Court and released from custody. While on pre-trial release, less than two weeks after his initial arrest, SAGASTUME-PINEDA sold fentanyl to an undercover police officer.

26. On May 8, 2023, SAGASTUME-PINEDA agreed to sell an undercover police officer ("UC") $500 of fentanyl. SAGASTUME-PINEDA told the UC to meet him in Oakland later that day to conduct the transaction.

27. The UC drove to the arranged location in Oakland. SAGASTUME-PINEDA entered the UC's vehicle. SAGASTUME-PINEDA handed the UC 61.1 grams of fentanyl in exchange for $500 dollars. SAGASTUME-PINEDA offered to sell the UC an ounce of fentanyl for $400 at a later date. He provided the UC with a small amount of "clean" fentanyl as a "sample." He then exited the vehicle.

28. I conducted presumptive testing of the fentanyl the UC purchased from SAGASTUME-PINEDA using an SFPD-issued TruNarc Analyzer. The suspected fentanyl

tested positive for fentanyl.

## CONCLUSION

29. On the basis of my training and experience, my participation in this investigation and the information summarized above, there is probable cause to believe SAGASTUME-PINEDA committed the following violations:

1) On or about April 24, 2023, Rodolofo SAGASTUME-PINEDA possessed with intent to a distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide, also known as fentanyl, a Schedule II controlled substance, in the Northern District of California, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

2) On or about April 24, 2023, Rodolofo SAGASTUME-PINEDA possessed with intent to distribute methamphetamine, its salts, isomers, or salts of its isomers, in the Northern District of California, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

3) On or about May 8, 2023, Rodolofo SAGASTUME-PINEDA possessed with intent to a distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide, also known as fentanyl, a Schedule II controlled substance, in the Northern District of California, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Accordingly, I request that the court issue a complaint and arrest warrant for RODOLFO SAGASTUME-PINEDA for the above charges.

/s
_____
Christina Hayes
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __24th__ day of May 2023. This application and warrant are to be filed under seal.

_____
HONORABLE LAUREL BEELER
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT   [ ] INFORMATION   [ ] INDICTMENT   [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

21 U.S.C. §§ 841(a)(1) and (b)(1)(C) - Possession with intent to distribute methamphetamine
21 U.S.C. §§ 841(a)(1) and (b)(1)(C) - Possession with intent to distribute fentanyl

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: Imprisonment 20 years max; Fine $1,000,000; Supervised release: min 3 years, max life; $100 assessment; forfeiture; deportation; deny federal benefits

### DEFENDANT - U.S
Rodolfo Sagastume-Pineda

DISTRICT COURT NUMBER

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
DEA TFO Christina Hayes

[X] person is awaiting trial in another Federal or State Court, give name of court
San Francisco Superior Court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY   [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: Ismail J. Ramsey
[X] U.S. Attorney   [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Emily R. Dahlke, AUSA

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [ ] If not detained give date any prior summons was served on above charges
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction   [ ] Federal [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? [ ] Yes [ ] No   If "Yes" give date filed

**DATE OF ARREST**   Month/Day/Year
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY**   Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
[ ] SUMMONS   [ ] NO PROCESS*   [X] WARRANT   Bail Amount:

If Summons, complete following:
[ ] Arraignment   [ ] Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments: